

Villanova University School of Law Digital Repository

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-21-2009

# Sulistiowati v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1148

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Sulistiowati v. Atty Gen USA" (2009). *2009 Decisions*. Paper 2009.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2009

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1148
_____

SULISTIOWATI,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of Order
of the Board of Immigration Appeals
(Agency No. A95-461-992)
Immigration Judge:  Hon. Rosalind K. Malloy

_____

Submitted under Third Circuit LAR 34.1(a)
October 30, 2008

Before:  MCKEE, NYGAARD and ROTH, <u>Circuit Judges</u>

(Opinion filed: January 21, 2009)

_____

OPINION
_____

PER CURIAM

        The petitioner, an Indonesian citizen, seeks review of a final order of the Board of

Immigration Appeals ("BIA"). For the following reasons, we will grant the petition for review.

I.

Sulistiowati entered the United States in 2001. She was served with a notice to appear in 2003, charging her with being subject to removal under INA § 237(a)(1)(B). While Sulistiowati conceded that she was removable as charged, she filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1] She claimed that she had been persecuted in Indonesia due to her status as an ethnic-Chinese Buddhist.

Sulistiowati claims to have been frightened (but not otherwise affected) by rioting on numerous occasions, but her application for relief centers on two particular events. During the May 1998 riots, Sulistiowati's home (which was located in Bangkalan, Madura Island) was broken into and looted. Sulistiowati and her neighbors were able to escape from their homes, and they hid in a canal for four hours until the army dispersed the crowd. During the riot, a Buddhist temple was burned, and she heard people shouting, in Arabic: "Kill the infidels." Although Sulistiowati did not believe that any of the estimated 500 rioters were arrested, she stated that the army protected "the area" for approximately one month until the tension eased.

---

[1]United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, 8 U.S.C. § 1231.

2

After the 1998 riots, Sulistiowati remained in Bangkalan, where she owned a shrimp farm. As a single, ethnic-Chinese woman, she believed that she needed to hide her ownership of the farm, so she hired ethnic-Indonesians to sell the produce. She contended, however, that her employees defrauded her by keeping the profits, and that they threatened to expose her as the owner unless she gave them more money. Sulistiowati stopped operating the farm (though she did not sell it) after the fall 2000 harvest (which apparently coincided with more rioting) when a mass of people who lived in the area stole the produce from the farm. She then moved to Jakarta.

In Jakarta, Sulistiowati rented and operated a store. In December 2000, she closed the store because churches were being bombed and she became frightened. She reopened in March 2001, but closed again after three months because she did not feel safe due to demonstrations and church burnings. She received her passport in June 2001, and a visa in July 2001; she left Indonesia in August 2001.

Sulistiowati lives in Philadelphia with her daughter, who received asylum in 1999.[2] In Philadelphia, Sulistiowati is an active member of the Buddhist temple. Three of her children still live in Indonesia—one in Surabaya and two in Jakarta—and her sisters operate a shop that was previously owned by their parents. She did not testify that any of her family in Indonesia is being or has been persecuted.

---

[2]Sulistiowati testified that she did not know the basis on which her daughter received asylum.

3

The Immigration Judge ("IJ") denied all relief except for voluntary departure. The IJ found that Sulistiowati's experiences did not rise to the level of persecution, as she was not physically injured, the army put down the 1998 riots and protected her neighborhood thereafter, and the incidents she described were part of the general civil strife in Indonesia. The IJ also determined that Sulistiowati did not demonstrate that the fraud and extortion perpetrated by her employees or the looting of her shrimp farm occurred because she was ethnic-Chinese. Finally, the IJ found that Sulistiowati did not establish a well-founded fear of future persecution.

On December 20, 2007, the BIA affirmed the IJ's decision without opinion.

II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). In situations like this, where the BIA adopts and affirms the IJ's decision, we review the decision of the IJ. Partyka v. Att'y Gen., 417 F.3d 408, 411 (3d Cir. 2005). Whether an applicant has demonstrated past persecution or otherwise established a likelihood of future persecution is a question of fact, which we review for substantial evidence. Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). This means that we must uphold the IJ's findings to the extent they are "supported by reasonable, substantial and probative evidence on the record as a whole." Id.

We will grant the petition for review because, although the conclusion that Sulistiowati did not establish past persecution is supported by substantial evidence, the IJ

4

did not address whether ethnic-Chinese are subject to a pattern or practice of persecution in Indonesia.[3]

We find no error in the conclusion that the incidents complained of, although serious and undoubtedly frightening, do not amount to persecution. The crux of Sulistiowati's claim was that her home was looted and she was forced to hide in a canal for four hours during a riot to protect herself. However, this incident, in addition to witnessing and hearing about additional riots, does not warrant a finding that she suffered sufficiently severe harm to constitute persecution. See Singh v. INS, 134 F.3d 962, 967 (9th Cir. 1998) (general violence does not rise to the level of persecution); see also Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (citing cases).

Additionally, Sulistiowati's abandonment of her shrimp farm after being defrauded and/or extorted by her employees and after people stole her inventory does not constitute the "deliberate imposition of severe economic disadvantage" that qualifies as persecution. See Li v. Att'y Gen., 400 F.3d 157, 168 (3d Cir. 2005). The IJ concentrated on the fact that Sulistiowati did not demonstrate that the problems she encountered in maintaining her business were on account of her ethnicity or religion, which is supported by the record. It is also important to recognize that when Sulistiowati left her shrimp farm, she maintained employment and was able to continue supporting herself by moving to Jakarta

---

[3]Because Sulistiowati did not appeal from the denial of CAT relief, she has waived that issue. See generally Kost v. Kozakiewicz, 1 F.3d 176, 182, 83 (3d Cir. 1993).

and opening a store. See id. at 169 (severe economic restriction amounted to persecution where the petitioner was blacklisted from government and most other employment, lost health benefits, school tuition, and food rations). Sulistiowati thus cannot demonstrate that she was a victim of economic persecution, as we have defined it. See id.

Sulistiowati also argues that the IJ erred by not examining the issue of whether a practice or practice of persecution exists against ethnic-Chinese in Indonesia. We find that this issue was properly raised before the BIA, and that we thus have jurisdiction to review it. 8 U.S.C. § 1252(d); Yan Lan Wu v. Ashcroft, 393 F.3d 418, 422 (3d Cir. 2005) ("So long an immigrant petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies.").

To establish a well-founded fear of persecution, the applicant must first demonstrate a subjective fear of persecution through credible testimony that her fear is genuine. Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). The applicant must also show, objectively, that a "reasonable person in the alien's circumstances would fear persecution if returned to the country in question." Id. To satisfy this prong, the applicant must show that she would be singled out for persecution, or that "there is a pattern or practice . . . of persecution against a group of persons similarly situated to the applicant" on one of the protected grounds. 8 C.F.R. § 208.13(b)(2)(iii)(A). To constitute a pattern or practice, the persecution of the group must be "systemic, pervasive,

6

or organized," and must be committed by "the government, or forces the government is either 'unable or unwilling' to control." Lie, 396 F.3d at 537 (internal citation omitted).

Here, the IJ found that Sulistiowati had not established a well-founded fear of persecution, stating only that she "could never fully articulate exactly what she feared if she were to return to Indonesia." (A.R. 59.) The IJ did not specifically address whether a pattern or practice of persecution of ethnic-Chinese existed in Indonesia. Thus, we will remand for consideration of this claim. See Sukwanputra v. Gonzales, 434 F.3d 627, 637 (3d Cir. 2006).

For the foregoing reasons, the petition for review will be granted, the order of the BIA vacated, and the case remanded for further proceedings consistent with the dictates of this opinion. Judge Roth voted to deny the petition for review.